UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re VIROPHARMA INCORPORATED SECURITIES LITIGATION | ) ) ) | Civil Action No. 2:12-cv-02714 <u>CLASS ACTION</u> |
| This Document Relates To: ALL ACTIONS. | ) ) ) ) ) ) ) ) | MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S UNCONTESTED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...........................................................................................................................4

I.  THE SETTLEMENT IS PRESUMPTIVELY FAIR BECAUSE IT IS THE
    PRODUCT OF ARM'S-LENGTH NEGOTIATIONS AND IS SUPPORTED BY
    COUNSEL ......................................................................................................................4

II.  THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ..............................5

    A.  The Law Favors and Encourages the Settlement of Class Actions ........................5

    B.  The Standards for Judicial Approval of Class Action Settlements.........................6

III.  APPLICATION OF THE *GIRSH* FACTORS  SUPPORTS APPROVAL OF THE
      SETTLEMENT................................................................................................................8

    A.  The Complexity, Expense, and Likely Duration of the Litigation Weigh in
        Favor of Final Approval of the Settlement .............................................................8

    B.  The Stage of the Proceedings Weighs in Favor of Final Approval ......................10

    C.  The Risks of Establishing Liability Weigh in Favor of Final Approval...............11

    D.  The Risks of Establishing Loss Causation and Damages Weigh in Favor of
        Final Approval .....................................................................................................14

    E.  The Risks of Maintaining the Class Certification Through Trial Weigh in
        Favor of Approval................................................................................................16

    F.  The Settlement Is Reasonable in Light of the Ability of Defendants to
        Withstand a Greater Judgment.............................................................................16

    G.  The Settlement Is Reasonable in Light of all the Attendant Risks of
        Litigation.............................................................................................................17

IV.  THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS ..............18

V.  THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION OF
    SETTLEMENT PROCEEDS .........................................................................................19

VI.  NOTICE TO THE SETTLEMENT CLASS SATISFIED THE REQUIREMENTS
     OF RULE 23 AND DUE PROCESS..............................................................................20

CONCLUSION.......................................................................................................................22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alves v. Main*,
    No. 01-789, 2012 WL 6043272 (D.N.J. Dec. 4, 2012), *aff'd*, 559 Fed. App'x
    151 (3d Cir. 2014) ...................................................................................................5

*Anixter v. Home-Stake Prod. Co.*,
    77 F.3d 1215 (10th Cir. 1996) ...............................................................................9

*In re Apollo Grp., Inc. Sec. Litig.*,
    No. 04 cv 2147, 2008 WL 3072731 (D. Ariz. Aug. 4, 2008), *rev'd*, 2010 WL
    5927988 (9th Cir. 2010) ........................................................................................14

*In re Apple Comput. Sec. Litig.*,
    No. C-84-20148(A), 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ...........................9

*In re AT&T Corp. Sec. Litig.*,
    455 F.3d 160 (3d Cir. 2006) ...................................................................................7

*ATLAS v. Accredited Home Lenders Holding Co.*,
    No. 07-CV-00488-H (CAB), 2009 WL 3698393 (S.D. Cal. Nov. 4, 2009) ............4

*In re Auto. Refinishing Paint Antitrust Litig.*,
    617 F. Supp. 2d 336 (E.D. Pa. 2007) ...................................................................11

*In re BankAtlantic Bancorp, Sec. Litig.*,
    No. 07-61542-CIV-UNGARD, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011),
    *aff'd*, 688 F.3d 713 (11th Cir. 2012) ...................................................................14

*Bryan v. Pittsburgh Plate Glass Co.*,
    494 F.2d 799 (3d Cir. 1974) ...................................................................................6

*Carson v. Am. Brands, Inc.*,
    450 U.S. 79 (1981) ..................................................................................................6

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) .........................................................................7, 8, 16

*In re Chambers Dev. Sec. Litig.*,
    912 F. Supp. 822 (W.D. Pa. 1995) .........................................................................9

*In re Corel Corp. Inc. Sec. Litig.*,
    293 F. Supp. 2d 484 (E.D. Pa. 2003) ...................................................................15

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
    248 F.R.D. 483 (E.D. Mich. 2008) ...................................................................4

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005)........................................................................................14

*Ehrheart v. Verizon Wireless*,
    609 F.3d 590 (3d Cir. 2010)........................................................................5, 6

*Fickinger v. C.I. Planning Corp.*,
    646 F. Supp. 622 (E.D. Pa. 1986) ..................................................................6

*Fisher Bros., Inc. v. Mueller Brass Co.*,
    630 F. Supp. 493 (E.D. Pa. 1985) ..................................................................6

*Fisher Bros. v. Phelps Dodge Indus., Inc.*,
    604 F. Supp. 446 (E.D. Pa. 1985) ..................................................................6

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975)..............................................................7, 8, 17

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995)..........................................................................4, 6, 7

*In re Greenwich Pharm. Sec. Litig.*,
    No. 92-3701, 1995 WL 251293 (W.D. Pa. Apr. 26, 1995)....................................18

*Hall v. AT&T Mobility LLC*,
    No. 07-5325, 2010 WL 4053547 (D.N.J. Oct. 13, 2010) .............................4

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    134 S. Ct. 2398 (2014)...................................................................................16

*In re Ikon Office Sols., Inc.*,
    277 F.3d 658 (3d Cir. 2002)..........................................................................11

*In re Ikon Office Sols., Inc., Sec. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000)..........................................................8, 9, 19

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
    No. 02 MDL 1484 (JFK), 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007)....................18

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2007) .......................................................18

*In re PaineWebber, Ltd. P'Ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) ..................................................................19

*In re Par Pharm. Sec. Litig.*,
  No. 06-3226, 2013 WL 3930091 (D.N.J. July 29, 2013) ......................................................17

*In re Pet Foods Prods. Liab. Litig.*,
  629 F.3d 333 (3d Cir. 2010)..........................................................................................................7

*Phillips v. Scientific-Atlanta, Inc.*,
  489 Fed. App'x. 339 (11th Cir. 2012) ......................................................................................14

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry Inc. v. Anderson*,
  390 U.S. 414 (1968)......................................................................................................................6

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998)........................................................................................5, 10, 11, 17

*In re Rent-Way Sec. Litig.*,
  305 F. Supp. 2d 491 (W.D. Pa. 2003)..............................................................................5, 8, 10

*Robbins v. Koger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997) ..............................................................................................9, 14

*In re Schering-Plough/ Merck Merger Litig.*,
  No. 09-cv-1099, 2010 WL 1257722 (D.N.J. Mar. 26, 2010) ...................................................11

*Semerenko v. Cendant Corp.*,
  223 F.3d 165 (3d Cir. 2000).........................................................................................................14

*Sherin v. Gould*,
  679 F. Supp. 473 (E.D. Pa. 1987) ................................................................................................5

*Smith v. Dominion Bridge Corp.*,
  No. 96-7580, 2007 WL 1101272 (E.D. Pa. Apr. 11, 2007).................................................11, 12

*Sullivan v. DB Invs.*,
  667 F.3d 273 (3d Cir. 2011)......................................................................................................4, 19

*In re Suprema Specialties, Inc. Sec. Litig.*,
  No. 02-168, 2008 WL 906254 (D.N.J. Mar. 31, 2008) .............................................................8

*Walsh v. Great Atl. & Pac. Tea Co.*,
  96 F.R.D. 632 (D.N.J.), *aff'd*, 726 F.2d 956 (3d Cir. 1983) ....................................................6

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004)........................................................................................................16

*Williams v. First Nat'l Bank*,
  216 U.S. 582 (1910).......................................................................................................................5

*In re Xcel Energy, Inc. Sec. Derivative & ERISA Litig.*,
  364 F. Supp. 2d 980 (D. Minn. 2005) .......................................................................................2

**Statutes**

15 U.S.C. §78u-5(c) ....................................................................................................................13

**Other Authorities**

Fed. R. Civ. P. 23(a) ..................................................................................................................19

Fed. R. Civ. P. 23(b)(3) ..............................................................................................................19

Fed. R. Civ. P. 23(c)(1) ..............................................................................................................16

Fed. R. Civ. P.  23(c)(2)(B) ........................................................................................................21

Fed. R. Civ. P. 23(e) ............................................................................................................1, 6, 7

Fed. R. Civ. P. 23(e)(1) ..............................................................................................................21

## PRELIMINARY STATEMENT

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff Carpenters' Local 27 Defined Benefit Trust Fund, respectfully submits this memorandum in support of its uncontested motion for final approval of the settlement of this class action for $8,000,000 in cash, including certification of the Settlement Class, and approval of the Plan of Allocation of settlement proceeds. The terms of the Settlement are set forth in the Stipulation and Agreement of Settlement, dated as of April 28, 2015 (the "Settlement Agreement"), which was previously filed with the Court in connection with Lead Plaintiff's Uncontested Motion for Preliminary Approval of Settlement and Approval of Notice to the Settlement Class. Dkt. No. 87-3.[1] As discussed herein and in the Declaration of Jonathan Gardner in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement and an Award of Attorneys' Fees and Expenses, dated September 24, 2015 and submitted herewith ("Gardner Declaration" or "Gardner Decl."),[2] Lead Plaintiff and its counsel have obtained an excellent recovery for the Settlement Class, which is the result of extensive litigation and arm's-length negotiations between the parties with the substantial assistance of retired U.S. District Court Judge Layn R. Phillips ("Judge Phillips"), a highly respected and experienced mediator.

---

[1] Unless otherwise defined herein, capitalized terms have the meanings ascribed to them in the Settlement Agreement.

[2] The Court is respectively referred to the accompanying Gardner Declaration, which contains a detailed description of the history of the Action, including the claims asserted, the proceedings to date, the investigation and discovery undertaken, the settlement negotiations, the substantial risks of continued litigation, as well as the factors bearing on the reasonableness of the Settlement, the Plan of Allocation, and the request for an award of attorneys' fees and expenses.

Citations to "Exhibit" or "Ex.___" herein refer to exhibits to the Gardner Declaration. For clarity, exhibits that themselves have attached exhibits will be referenced as "Ex. __-__." The first numerical reference refers to the designation of the entire exhibit attached hereto and the second reference refers to the exhibit designation within the exhibit itself.

This case has been carefully investigated and vigorously litigated since its inception in May 2012.   At every stage of the Action, counsel for Defendants asserted aggressive defenses and expressed their belief that Lead Plaintiff could not and should not prevail on the claims asserted. While the Action settled at a relatively early stage of the litigation, a result consistent with Rule 1 of the Federal Rules of Civil Procedure, Lead Counsel spent a considerable amount of time and resources prior to its resolution.[3]

By the time the Settlement was reached, Lead Counsel, with the assistance of Plaintiff's Counsel, had: *inter alia*: (a) conducted a thorough and diligent investigation relating to the claims asserted and underlying events of the Action; (b) interviewed 35 witnesses, including former employees of ViroPharma Incorporated ("ViroPharma" or the "Company"), after locating almost 130 potential witnesses and contacting more than 73 of them, the accounts of six of whom were included in the Complaint as confidential witness ("CW") accounts; (c) prepared and filed a detailed Amended Class Action Complaint for Violations of the Federal Securities Laws ("Complaint") (Dkt. No. 35); (d) successfully opposed Defendants' comprehensive motion to dismiss; (e) successfully opposed Defendants' motion to certify for interlocutory appeal the Court's Order denying the motion to dismiss; (f) participated in an expedited discovery process in preparation for mediation, reviewing approximately five thousand documents (totaling over 40,000 pages produced by Defendants and non-parties); (g) reviewed documents obtained from the Food and Drug Administration ("FDA") pursuant to a Freedom of Information Act request and subpoena; (h) consulted with experts, including an economist with significant experience analyzing complex issues regarding damages and loss causation and an expert in the pharmaceutical industry and FDA regulations; and (i) engaged in

---

[3]      *See In re Xcel Energy, Inc. Sec. Derivative & ERISA Litig.*, 364 F. Supp. 2d 980, 992 (D. Minn. 2005) (noting that early resolution of the case is consistent with Rule 1 of the Federal Rules of Civil Procedure).

extensive arm's-length settlement negotiations, including mediation with Judge Phillips.  Gardner Decl. ¶¶24-45, 60-61.

The Settlement takes into account the specific risks and obstacles that Lead Plaintiff and the Settlement Class would face if litigation were to continue.  Lead Counsel is highly experienced in prosecuting securities class actions, and has concluded that the Settlement is a highly favorable recovery in the light of the risk, delay, and expense of continued litigation.  *See generally*, Gardner Decl., Ex. 4 - A.  This conclusion is based on, among other things, the substantial and certain recovery obtained when weighed against the significant risk, expense, and delay presented in continuing the Action through the completion of discovery, class certification, Defendants' anticipated motion(s) for summary judgment, trial, and probable post-trial motions and appeal(s); a complete analysis of the evidence adduced to date; past experience in litigating complex actions similar to the present action; and the serious disputes between the parties concerning the merits and damages.  *Id.*

For all the reasons discussed herein and in the Gardner Declaration, it is respectfully submitted that the Settlement is fair, reasonable, and adequate and should be finally approved by the Court.  The Court should also approve the Plan of Allocation for distribution of the Settlement proceeds, which was set forth in full in the Notice that was sent to Settlement Class Members.  The Plan of Allocation governs how Settlement Class Members' claims will be calculated.  It was developed with the assistance of Lead Plaintiff's consulting damages expert, and is consistent with an assessment of, among other things, the damages that Lead Plaintiff and its counsel believe were recoverable in the Action.  Therefore, the Plan of Allocation is fair, reasonable, and adequate, and should likewise be approved.

**ARGUMENT**

**I.     THE SETTLEMENT IS PRESUMPTIVELY FAIR BECAUSE IT IS THE
        PRODUCT OF ARM'S-LENGTH NEGOTIATIONS AND IS SUPPORTED
        BY COUNSEL**

A presumption of fairness applies when reviewing a proposed settlement where, as here, the settlement is reached by experienced counsel after arm's-length negotiations. *See, e.g.*, *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) ("*GMC Trucks*"); *Sullivan v. DB Invs.*, 667 F.3d 273, 320 (3d Cir. 2011) . The Settlement resulted from arm's-length negotiations between highly experienced counsel and with the substantial assistance of Judge Phillips.[4] Gardner Decl. ¶¶60-62. The principal lawyers involved in the settlement negotiations are all well known for their effective representation of their clients, and have many years of experience in the effective prosecution, defense, and resolution of complex securities actions. Importantly, the parties only reached an agreement-in-principle to settle after an all-day mediation session with Judge Phillips on January 5, 2015 and continued negotiations thereafter, with the assistance of Judge Phillips. *Id.* ¶¶60-61. Ultimately, the parties separately accepted a mediator's proposal on February 5, 2015. *See Hall v. AT&T Mobility  LLC*, No. 07-5325, 2010 WL 4053547, at *7 (D.N.J. Oct. 13, 2010) ("the participation of an independent mediator in settlement negotiations virtually insures [sic] that the negotiations were conducted at arm's length and without collusion between the parties.") (citation omitted).

---

[4]     *See In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 498, n.14 (E.D. Mich. 2008) (recognizing "the outstanding work done by Judge Phillips" in settlement negotiations and "the added benefit of the insight and considerable talents of [this] former federal judge who is one of the most prominent and highly skilled mediators of complex actions"); *ATLAS v. Accredited Home Lenders Holding Co*., No. 07-CV-00488-H (CAB), 2009 WL 3698393, at *3 (S.D. Cal. Nov. 4, 2009) ("The settlement negotiations were also fair.  They were closely supervised by the Honorable Layn Phillips (Ret.) and conducted at arm's length by experienced and competent counsel.").

Lead Counsel's "assessment of the [S]ettlement as fair and reasonable is entitled to considerable weight." *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 509 (W.D. Pa. 2003) (internal citation omitted). Lead Counsel, which has extensive experience prosecuting securities class actions, believes that the Settlement is a highly favorable result and in the best interest of the Settlement Class. In reaching this conclusion, Lead Counsel considered the strengths and weaknesses of Lead Plaintiff's claims based on the evidence adduced to date as well as Defendants' interpretation of that evidence and the risks that the Court or a jury may have ruled in favor of Defendants on some or all of the claims resulting in no or little recovery for the Settlement Class. As a result, Lead Counsel's opinion should be afforded considerable weight. *See Alves v. Main*, No. 01-789, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012), *aff'd*, 559 Fed. App'x 151 (3d Cir. 2014) ("courts in this Circuit traditionally attribute significant weight to the belief of experienced counsel that settlement is in the best interest of the class") (internal quotations omitted).

Additionally, the Settlement has the full support of Lead Plaintiff, which is an institutional investor with a substantial stake in the litigation. *See* Exhibit 1.

## II.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.   The Law Favors and Encourages the Settlement of Class Actions

It is well settled that "[c]ompromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 317 (3d Cir. 1998); *Sherin v. Gould*, 679 F. Supp. 473, 474 (E.D. Pa. 1987). Settlement spares the litigants the uncertainty, delay and expense of a trial and appeals while simultaneously reducing the burden on judicial resources. The Third Circuit Court of Appeals has reiterated the long standing principle that there is a "strong presumption in favor of voluntary settlement agreements." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir. 2010). "This

presumption is especially strong in 'class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'" *Id*. at 595 (citation omitted).

### B.    The Standards for Judicial Approval of Class Action Settlements

Federal Rule of Civil Procedure 23(e) provides that a class action shall not be dismissed or compromised without the approval of the court.  *See also GMC Trucks*, 55 F.3d at 785.  In a class action, the "court plays the important role of protector of the [absent members'] interests, in a sort of fiduciary capacity."  *Id*. at 784.  The ultimate determination of whether a proposed class action settlement warrants approval is within the court's discretion.  *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968).

While this Court has discretion in determining whether to approve the Settlement, it should be hesitant to substitute its judgment for that of the parties who negotiated the Settlement.  *See Fisher Bros. v. Phelps Dodge Indus., Inc.*, 604 F. Supp. 446, 452 (E.D. Pa. 1985).  "Courts judge the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement. . . .  They do not decide the merits of the case or resolve unsettled legal questions."  *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981); *Walsh v. Great Atl. & Pac. Tea Co.*, 96 F.R.D. 632, 642-43 (D.N.J.), *aff'd*, 726 F.2d 956 (3d Cir. 1983).  A court may rely on the judgment of experienced counsel and should avoid transforming the hearing on the settlement into a trial on the merits.  *See Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 804 (3d Cir. 1974); *Walsh*, 96 F.R.D. at 642.

In determining the adequacy of a proposed settlement, a court should ascertain whether the settlement is within a range that responsible and experienced attorneys could accept, considering all relevant risks.  *See Fickinger v. C.I. Planning Corp.*, 646 F. Supp. 622, 630 (E.D. Pa. 1986).  That analysis recognizes the "'uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"  *Fisher Bros., Inc. v.*

*Mueller Brass Co.*, 630 F. Supp. 493, 499 (E.D. Pa. 1985) (citation omitted).  A court must therefore

consider whether the proposed settlement is "'fair, reasonable, and adequate.'"  *In re Cendant Corp.*

*Litig.*, 264 F.3d 201, 231 (3d Cir. 2001) (citation omitted).  In *Girsh v. Jepson*, 521 F.2d 153 (3d Cir.

1975), the Third Circuit advised district courts to consider the following factors in deciding whether

to approve a proposed settlement of a class action under Rule 23(e):

> "(1) the complexity, expense and likely duration of the litigation . . . ; (2) the reaction
> of the class to the settlement [5] . . . ; (3) the stage of the proceedings and the amount
> of discovery completed . . . ; (4) the risks of establishing liability . . . ; (5) the risks of
> establishing damages . . . ; (6) the risks of maintaining the class action through the
> trial . . . ; (7) the ability of the defendants to withstand a greater judgment; (8) the
> range of reasonableness of the settlement fund in light of the best possible
> recovery . . . ; [and] (9) the range of reasonableness of the settlement fund to a
> possible recovery in light of all the attendant risks of litigation . . . . "

*Id*. at 157 (citation omitted).  *Accord In re Pet Foods Prods. Liab. Litig*., 629 F.3d 333, 350 (3d Cir.

2010).  *See also In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164-65 (3d Cir. 2006); *GMC Trucks*, 55

F.3d at 782.

As set forth herein and in the Gardner Declaration, the Settlement is a highly favorable result,

is presumptively fair, and clearly satisfies the *Girsh* factors.  Substantial doubt exists as to whether

any greater recovery could have been obtained against Defendants in the absence of the Settlement,

in light of establishing that the alleged statements were false and material, scienter, loss causation,

and damages.  Accordingly, the Settlement is superior to another very real possibility – little or no

recovery at all.

---

[5]     The second *Girsh* factor is the reaction of the class to the settlement.  The deadline for
Settlement Class Members to file objections to the Settlement is not until October 8, 2015.  To date,
although more than 18,000 Notices have been mailed, Lead Counsel has not received any objections
to any aspect of the Settlement and has only received two invalid requests for exclusion.  *See*
Gardner Decl. ¶69; Ex. 3 ¶12.  Lead Counsel will address objections, if any, in a reply brief to
be filed on or before October 22, 2015, in accordance with the Court's May 7, 2015 Order Granting
Preliminary Approval of Class Action Settlement and Directing Notice to the Settlement Class (Dkt.
No. 88).

III.    APPLICATION OF THE *GIRSH* FACTORS
        SUPPORTS APPROVAL OF THE SETTLEMENT

      A.    **The Complexity, Expense, and Likely Duration of the Litigation
              Weigh in Favor of Final Approval of the Settlement**

The first *Girsh* factor – the complexity, expense, and likely duration of the litigation –
assesses the "probable costs, in both time and money, of continued litigation." *Cendant*, 264 F.3d at
233. In evaluating the settlement of securities class actions, courts have repeatedly recognized that
such litigation is complex and uncertain. *See, e.g.*, *In re Rent–Way Sec. Litig.*, 305 F. Supp. 2d , at
501 ("[T]his has been, and will continue to be, a very expensive case to prosecute and defend in light
of the complexity of the issues and necessity for expert witnesses."); *In re Suprema Specialties, Inc.
Sec. Litig.,* No. 02-168, 2008 WL 906254, at *5 (D.N.J. Mar. 31, 2008) (finding complexity of the
securities class action supports final approval). Indeed, courts have recognized that "securities
actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA." *In re
Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) (citation omitted).

The end-result of this Action would have turned on close questions of law, evidence, and
fact. But for the Settlement, the parties would have briefed heavily contested motions for class
certification and summary judgment, all of which would have required substantial expert testimony
and would have presented the risk of adverse rulings. *See* Gardner Decl. ¶¶47, 53-55. Lead Plaintiff
would have had to establish that Defendants made false or misleading statements and that the class
was entitled to recover damages under the securities laws as a result of Defendants' conduct. These
elements involved complicated legal and factual theories, a complex regulatory landscape subject to
multiple interpretations, and competing expert testimony on issues ranging from damages to drug
development. *Id.* ¶¶46-57.

If not for this Settlement, the case would have continued to be fiercely contested by all
parties. While Lead Counsel has already expended substantial amounts of time and money to reach

the point of settlement, further significant time and expenses would be incurred to complete pre-trial

proceedings and conduct a trial.  As the court noted in *In re Ikon*, which is equally applicable here:

> [i]n the absence of a settlement, this matter will likely extend for . . . years longer
> with significant financial expenditures by both defendants and plaintiffs.  This is
> partly due to the inherently complicated nature of large class actions alleging
> securities fraud: there are literally thousands of shareholders, and any trial on these
> claims would rely heavily on the development of a paper trial [sic] through numerous
> public and private documents.

194 F.R.D. at 179.

Moreover, even if the jury returned a favorable verdict after trial, there is no question that

any verdict would be the subject of numerous post-trial motions and a complex multi-year appellate

process.  This is especially true because only a few Private Securities Litigation Reform Act of 1995

("PSLRA") cases have proceeded to trial, and many of the issues specific to the application and

effect of certain provisions of the PSLRA are novel, with little or no appellate authority interpreting

them.  Taking into account the likelihood of appeals, absent this Settlement, this case likely would

have continued for years despite the best efforts of the Court and the parties to speed the process.

Thus, "[i]t is safe to say, in a case of this complexity, the end of that road might be miles and years

away."  *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 837 (W.D. Pa. 1995).

Therefore, even if the claims of the class were to survive summary judgment and result in a

larger recovery after trial and concomitant appeals, which is certainly not guaranteed, the additional

delay,  would deny the Settlement Class any recovery for years, or possibly deny recovery altogether

in the event of a reversal.[6]  The Settlement secures a certain benefit for the Settlement Class in this

highly complex and contested action, undiminished by further expenses, and without the delay, risk,

---

[6]      For illustrative purposes, *see, e.g., Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir.
1997) (reversal of jury verdict of $81 million against accounting firm after a 19-day trial); *Anixter v.
Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict following two
decades of litigation); *cf. In re Apple Comput. Sec. Litig.*, No. C-84-20148(A), 1991 WL 238298
(N.D. Cal. Sept. 6, 1991) ($100 million jury verdict vacated on post-trial motions).

and uncertainty of continued litigation. *See, e.g.*, *Prudential*, 148 F.3d at 318 (settlement was favored where "the trial of this class action would be a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court").

**B.    The Stage of the Proceedings Weighs in Favor of Final Approval**

The third factor requires a court "to consider the degree to which the litigation has developed prior to settlement." *Rent-Way*, 305 F. Supp. 2d at 502. "The goal here is to determine 'whether counsel had an adequate appreciation of the merits of the case before negotiating.'" *Id.*

In this Action both the knowledge of Lead Plaintiff and its counsel and the proceedings themselves had reached a stage where an intelligent evaluation of the strengths and weaknesses of the Settlement Class' claims and the propriety of the Settlement could be made. As discussed above and in the Gardner Declaration, by the time the Settlement was reached, Lead Counsel had the benefit of an extensive pre-filing investigation, including interviews of 35 potential witnesses, such as former ViroPharma employees; drafted the Complaint; successfully opposed Defendants' motions to dismiss and to certify an appeal of that dismissal; reviewed over 40,000 pages of core documents produced by Defendants, the FDA and third parties; and met extensively with experts, including a damages expert and regulatory expert. Gardner Decl. ¶¶24-45.

Lead Counsel also participated in a formal mediation session with Judge Phillips, and continued negotiations with Defendants under the auspices of Judge Phillips over the next several weeks, during which the strengths and weaknesses of the Settlement Class' claims were fully vetted. *Id.* ¶¶60-62. Prior to the mediation, Lead Plaintiff and Defendants submitted to Judge Phillips, and exchanged, detailed mediation statements which focused on the myriad factual and legal issues in dispute. *Id.* ¶60. There is no question that Lead Plaintiff and its counsel were in an excellent position to evaluate the strengths and weaknesses of the claims asserted and defenses raised by Defendants, as well as the substantial risks of continued litigation and the propriety of settlement.

Having sufficient information to properly evaluate the case, the Action was settled on terms highly favorable to the Settlement Class.

### C.    The Risks of Establishing Liability Weigh in Favor of Final Approval

In assessing the fairness of the Settlement, the Court must balance the benefits afforded the class, including the immediacy of a substantial recovery, against the risks of establishing liability and damages through continued litigation.  *See Prudential*, 148 F.3d at 319; *Smith v. Dominion Bridge Corp.*, No. 96-7580, 2007 WL 1101272, at *5 (E.D. Pa. Apr. 11, 2007).  In considering this factor, the Court has recognized that "[a] trial on the merits always entails considerable risks," *In re Schering-Plough/ Merck Merger Litig.*, No. 09-cv-1099, 2010 WL 1257722, at *10 (D.N.J. Mar. 26, 2010), and 'no matter how confident one may of the outcome of the litigation, such confidence is often misplaced." *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 343 (E.D. Pa. 2007).

To establish its §10(b) claim, Lead Plaintiff must prove that Defendants: (1) made a misstatement or an omission of a material fact; (2) with scienter; (3) in connection with the purchase or sale of a security; (4) upon which the plaintiffs reasonably relied; and (5) that proximately caused the injuries.  *In re Ikon Office Sols., Inc.*, 277 F.3d 658, 667 (3d Cir. 2002).  Lead Plaintiff's case centered on allegations that during the Class Period, Defendants made material false and misleading statements to the market that contradicted and/or omitted what the FDA had privately told Defendants concerning efforts to update the package label and gain extended marketing exclusivity for the Company's most lucrative drug, Vancocin.

While Lead Plaintiff believes that based on the evidence adduced to date, including interviews with former ViroPharma employees, review of more than 40,000 pages of documents, and the negotiations where the parties' respective positions were fully vetted, it had a strong case as to liability and would be able to prove that Defendants made material false and misleading

statements and/or omissions with the requisite scienter, it is aware that establishing liability at trial would by no means be guaranteed.  Indeed, Defendants have adamantly denied any liability and have asserted from the outset of the Action that they possess absolute defenses to Lead Plaintiff's claims. Lead Plaintiff was aware that Defendants would present counter evidence and other substantial obstacles to obtaining a judgment in its favor at trial.  There was no certainty that additional discovery would tend to support Lead Plaintiff's allegations.   In order to prove its case, Lead Plaintiff would have to rely on significant testimony from current and former ViroPharma employees and other witnesses, many of whom would be testifying about matters that occurred some years ago. As a result of the time between the events of interest and any deposition or trial, the ability, as well as willingness, of many witnesses to testify completely about those events would be impaired.  These issues did and would continue to seriously affect Lead Plaintiff's ability to successfully prosecute its claims.  Gardner Decl. ¶¶46-58.

Although Lead Plaintiff cleared the pleading stage, there was no guarantee that it would be able to overcome Defendants' likely motion(s) for summary judgment and/or prove its claims at trial.  For example, one of the most difficult issues going forward would be Lead Plaintiff's ability to prove falsity and scienter, *i.e.*, that Defendants acted with knowledge of or with recklessness as to the alleged falsity of their statements and omissions.  Gardner Decl. ¶¶48-52.  A defendant's state of mind in a securities case is often the most difficult element of proof and one which is rarely supported by direct evidence such as an admission.  *See Smith,* 2007 WL 1101272, at *5 ("Since stockholders normally have little more than circumstantial and accretive evidence to establish the requisite scienter,' proving scienter is an 'uncertain and difficult necessity for plaintiffs.'").  Thus, it was quite possible that Lead Plaintiff would procure documentary and testimonial evidence from

Defendants and others with knowledge about the relevant facts, yet not be able to adduce sufficient evidence to satisfy its burden of proof on this issue at trial.

Defendants had previously argued, and would be expected to argue again at summary judgment and/or trial, among other things, that the FDA did not advise them in advance that it would deny the Company's bid for extended exclusivity and that the FDA did not even make its determination until it was announced at the end of the Class Period.  Gardner Decl. ¶50.  With respect to Defendants' stock sales, Lead Plaintiff would have relied, in part, on the large volume of insider sales by two individual defendants (Doyle and Rowland) during the Class Period as evidence of scienter, showing that their sales were unusual both in timing and amount compared to prior sales. *Id*. ¶49.  Defendants, however, would have countered that defendants Doyle and Rowland still retained significant stock and option holdings after their Class Period sales, and that had they truly known the declining situation as Lead Plaintiff contended, they would have sold more.  *Id*. Defendants also would have pointed to the fact that only two of the four individual defendants sold stock, and that ViroPharma's CEO, who made a number of the challenged statements, did not make any sales of stock during the Class Period.  *Id*. As a result, it did not make economic sense, as Defendants would have argued, for the CEO to commit fraud to purportedly inflate the stock price while at the same time holding all of his shares and directing a massive repurchase program on behalf of the Company.  *Id*.  Clearly, the question of scienter was not without risk and a jury could have decided the issue against Lead Plaintiff and the Settlement Class.

Additionally, Defendants would have argued that all of the challenged statements involved predictions about a future decision by the FDA, thus triggering the safe harbor provisions of the PSLRA,  15 U.S.C. §78u-5(c).  Under the statute, Lead Plaintiff would have been required to prove actual knowledge, which is a significantly more demanding standard of scienter than applies to

statements of current fact.  Given these arguments, Defendants could have made a persuasive case

that they had a good faith belief that Vancocin would in fact be approved for an additional three

years of exclusivity under the QI Act, thereby defeating Lead Plaintiff's proof of scienter.  *Id.* ¶51.

In short, Lead Plaintiff faced numerous obstacles in proving liability if litigation continued.

Thus, when compared with the immediate benefit provided by the Settlement, this factor weighs in

favor of approval of the Settlement.

### D.      The Risks of Establishing Loss Causation and Damages Weigh in Favor of Final Approval

Even if Lead Plaintiff was successful in establishing falsity and scienter, it faced substantial

risks in proving loss causation and damages.  The determination of damages is a complicated and

uncertain process, involving the analysis of many subjective factors.  Damages in a §10(b) action are

measured by "the difference between the purchase price and the 'true value' of the security [*i.e.*,

value absent the fraud] at the time of the purchase."  *Semerenko v. Cendant Corp.*, 223 F.3d 165, 184

(3d Cir. 2000).  Lead Plaintiff must also show that the alleged false statements or omissions caused

the damages, *i.e.*, loss causation.  Absent settlement, proving loss causation would be a major risk

faced by Lead Plaintiff.  The Supreme Court's decision in *Dura Pharms., Inc. v. Broudo*, 544 U.S.

336 (2005) and the subsequent cases interpreting *Dura* have made proving loss causation even more

difficult and uncertain than it was in the past.[7]

---

[7]      *See, e.g., In re Apollo Grp., Inc. Sec. Litig.,* No. 04 cv 2147, 2008 WL 3072731 (D. Ariz. Aug. 4, 2008), *rev'd,* 2010 WL 5927988 (9th Cir. 2010) (on a motion for judgment as a matter of law, overturned a jury verdict in favor of shareholders based on insufficient evidence presented at trial to establish loss causation); *Phillips v. Scientific-Atlanta, Inc.*, 489 Fed. App'x. 339 (11th Cir. 2012) (upholding summary judgment in favor of defendants on loss causation grounds in a case litigated since 2001); *In re BankAtlantic Bancorp, Sec. Litig.*, No. 07-61542-CIV-UNGARD, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (after four-week trial conducted by Labaton Sucharow, court granted defendants' judgment as a matter of law on the basis of loss causation, overturning jury verdict and award in plaintiff's favor), *aff'd,* 688 F.3d 713 (11th Cir. 2012); *Robbins,* 116 F.3d at 1441 (finding no loss causation and overturning $81 million jury verdict).

For example, Defendants would assert that Lead Plaintiff could not prove loss causation because on the date that Lead Plaintiff alleges that the corrective disclosure was made, causing the stock price of ViroPharma to drop, multiple negative announcements were made, the majority of which did not pertain to the alleged fraud.  Thus, Defendants would argue that Lead Plaintiff could not disaggregate non-fraudulent news to apportion causation and damages and, therefore, Lead Plaintiff could not establish loss causation.  Gardner Decl. ¶57.  While Lead Plaintiff vigorously disagreed with Defendants' assertions and believes that it would have been able to establish loss causation, there is no question that this element of the claims would have been hotly contested if litigation continued.

The determination of loss causation and damages almost always involves conflicting expert testimony presented on behalf of defendants and plaintiffs.  Expert testimony could rest on many subjective assumptions, any of which could be rejected by a jury as speculative or unreliable.  Lead Plaintiff would have likely faced a motion *in limine* by Defendants to preclude Lead Plaintiff's damages expert's testimony under the *Daubert* test and risked a decision that a valuation model might not be admissible in evidence.  Even if Lead Plaintiff's experts survived *Daubert* challenges, at trial the loss causation and damage assessments of Lead Plaintiff's and Defendants' experts were sure to vary substantially, and in the end, this crucial element at trial would be reduced to a "battle of experts."  *See In re Corel Corp. Inc. Sec. Litig.*, 293 F. Supp. 2d 484, 492 (E.D. Pa. 2003) ("The conflicting damage theories of defendants and plaintiffs would likely have resulted in an expensive battle of the experts and it is impossible to predict how a jury would have responded.").  Indeed, Lead Counsel recognize the possibility that a jury could be swayed by convincing experts for Defendants and find that there were no damages or only a fraction of the amount of damages Lead Plaintiff contended.

### E.      The Risks of Maintaining the Class Certification Through Trial Weigh in Favor of Approval

At the time of settlement, Lead Plaintiff had not moved for class certification.  While Lead Plaintiff believes that a contested motion for class certification would have been granted, in light of the U.S. Supreme Court's recent decision in *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398 (2014), Defendants undoubtedly would have introduced expert testimony to attempt to demonstrate a lack of price impact on ViroPharma's securities' prices on relevant days during the Class Period, which, if successful, would have defeated Lead Plaintiff's motion.  Gardner Decl. ¶47. Even if Lead Plaintiff successfully certified a class, and the certification survived a lengthy appeal, Federal Rule of Civil Procedure 23(c)(1) provides that a class certification order may be altered or amended any time before a decision on the merits.  Thus, in any class action suit, even if a class is initially certified, there is always a risk that it will be modified or decertified prior to a decision on the merits.

### F.      The Settlement Is Reasonable in Light of the Ability of Defendants to Withstand a Greater Judgment

This factor evaluates whether Defendants "could withstand a judgment for an amount significantly greater than the Settlement." *Cendant*, 264 F.3d at 240.  While Defendants here could have withstood a judgment in excess of the Settlement Amount, the fact that Defendants could have paid more money does not render the Settlement unreasonable.  *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004) ("[T]he fact that [the defendant] could afford to pay more does not mean that it is obligated to pay any more than what the . . . class members are entitled to under the theories of liability that existed at the time the settlement was reached").  Thus, this factor is neutral.

### G.     The Settlement Is Reasonable in Light of all the Attendant Risks of Litigation

The final two *Girsh* factors are typically considered in tandem, and ask "whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial." *Prudential*, 148 F.3d at 322.  "In making this assessment, the Court compares the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, with the amount of the proposed settlement." *In re Par Pharm. Sec. Litig.*, No. 06-3226, 2013 WL 3930091, at *7 (D.N.J. July 29, 2013) (citing *GMC Trucks*, 55 F.3d at 806).  As explained herein and in the Gardner Declaration, the Settlement provides for a substantial and certain cash payment of $8,000,000, plus any accrued interest, for the direct benefit of the Settlement Class.[8]

Here, as set forth above and in the Gardner Declaration, Lead Plaintiff faced considerable risks in proving its claims.  And even if it established liability, it faced the risk of a finding that the Settlement Class did not suffer any compensable damages.  If Lead Plaintiff had ultimately prevailed at trial, there was still no guarantee of a recovery – for an appeal would surely follow.  Lead Plaintiff's consulting damages expert has estimated that the Settlement Class sustained maximum damages in the range of approximately $78.5 million (for the one day drop following the corrective disclosure) to $90 million (for the two day drop following the corrective disclosure), assuming that

---

[8]     The entirety of the Settlement Amount is for the benefit of the Settlement Class.  Once the Settlement is effective and the Court approves an initial distribution of the net settlement proceeds, after the payment of any attorneys' fees and expenses approved by the Court or incurred Notice and Administration Expenses, distributions will be made to eligible claimants as many times as is economically feasible.  *See* Settlement Agreement, ¶26.  This will maximize the recoveries of eligible claimants.  If there is a remaining unclaimed balance after the distributions and the payment of any outstanding Taxes or Notice and Administration Expenses, which is uneconomical to distribute, as set forth in the Settlement Agreement and Notice the balance will be donated to the Council of Institutional Investors, a non-profit organization that works to further the interests of investors.  *See, e.g.,* http://www.cii.org/about_us.  Lead Counsel anticipates that if there is an unclaimed balance that cannot be distributed, it would total less than $15,000.

liability and loss causation for the alleged corrective disclosure was proven and based on various assumptions and modeling.  The Settlement, therefore, represents approximately 9% to 10% of estimated maximum losses – an excellent recovery in light of the risks of continued litigation. Gardner Decl. ¶6, *see, e.g.*, *In re Greenwich Pharm. Sec. Litig.*, No. 92-3701, 1995 WL 251293, at *5 (W.D. Pa. Apr. 26, 1995) (approving $4.375 million settlement that obtained 4.4% of estimated maximum damages); *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2007) (approving $13.75 million settlement yielding 6% of potential damages, which was "higher than the median percentage of investor losses recovered in recent shareholder class action settlements"); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) (finding that a recovery representing 6.25% of damages was "at the higher end of the range of reasonableness of recovery in class actions securities litigations") (citation omitted).

The Settlement Amount is also generally greater than the median reported settlement amounts since the passage of the PSLRA, which have ranged from $5.6 million in 1996 (adjusted for inflation) to $6.5 million in 2014.  *See* Renzo Comolli & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2014 Full-Year Review* (NERA Jan. 2015), Ex. 2 at 28.

For all the foregoing reasons, it is respectfully submitted that the proposed Settlement satisfies the factors articulated by the Third Circuit and should be approved as fair, reasonable, and adequate.

## IV.    THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS

In presenting the proposed Settlement to the Court for preliminary approval, Lead Plaintiff requested that the Court preliminarily certify the Settlement Class so that notice of the proposed Settlement, the final approval hearing and the rights of Settlement Class Members to request exclusion, object or submit proofs of claim could be issued.  In its Preliminary Approval Order, this

Court preliminarily certified the Settlement Class.  Nothing has changed to alter the propriety of the Court's certification and, for all the reasons stated in Lead Plaintiff's Memorandum of Law in Support of Uncontested Motion for Preliminary Approval of Settlement and Approval of Notice to the Settlement Class (Dkt. No. 87) incorporated herein by reference, Lead Plaintiff now requests that the Court grant final certification of the Settlement Class for purposes of carrying out the Settlement pursuant to Fed. R. Civ. P. 23(a) and (b)(3), appoint Lead Plaintiff Carpenters' Local 27 Defined Benefit Trust Fund as Class Representative and appoint Lead Counsel Labaton Sucharow LLP as Class Counsel for the Settlement Class.

## V.    THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS

The Notice contains the Plan of Allocation, detailing how the settlement proceeds are to be divided among eligible Settlement Class Members.  A trial court has broad discretion in approving a plan of allocation.  *See Sullivan*, 667 F.3d at 328.  The test is simply whether the proposed plan of allocation, like the settlement itself, is fair and reasonable.  *See Walsh v. Great Atl. & Pac. Tea Co*., 726 F.2d 956, 964 (3d Cir. 1983) ("The court's principal obligation is simply to ensure that the fund distribution is fair and reasonable.").  "In general, a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable."  *Ikon*, 194 F.R.D. at 184.

In determining whether a proposed plan is fair, courts look primarily to the opinion of counsel.  *See In re PaineWebber, Ltd. P'Ships Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y. 1997) ("[T]he adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information.").  Here, the Plan of Allocation, which was prepared with the assistance of Lead Plaintiff's damages expert, provides for the *pro rata* distribution of the Net Settlement Fund based on formulas tied to liability and damages.  The formulas consider the amount of alleged artificial

inflation in the prices of ViroPharma's Securities, as quantified by Lead Plaintiff's expert. Lead Plaintiff's consulting damages expert analyzed the movement in the prices of ViroPharma Securities and took into account the portion of the price drops attributable to the alleged fraud. Gardner Decl. ¶¶71-72.

Calculation of a Recognized Loss will depend on several factors, including the type of ViroPharma Security purchased, when a claimant purchased ViroPharma Securities, and whether the securities were sold during the Class Period, and if so, when. *Id.* ¶73.

In sum, the Proposed Plan of Allocation should be approved as it was designed to fairly and rationally allocate the Net Settlement Fund among Authorized Claimants.

## VI.    NOTICE TO THE SETTLEMENT CLASS SATISFIED THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

In accordance with the Preliminary Approval Order, to date 18,618 copies of the Notice have been mailed to potential Settlement Class Members and their nominees. *See* Affidavit Regarding (A) Mailing of the Notice and Proof of Claim Form; (B) Publication of Summary Notice; (C) Website and Telephone Helpline; and (D) Report on Requests for Exclusions Received to Date, dated September 22, 2015, ("Mailing Declaration" or "Mailing Decl."), ¶¶3-6, Ex. 3. The Summary Notice was also published in *Investors Business Daily* on June 3, 2015 and disseminated over the *PR Newswire* on June 5, 2015. *Id.* ¶7. The Notice, the Proof of Claim form, the Settlement Agreement and its exhibits, and the Preliminary Approval Order were also posted on a case-specific website identified in the Notice, and Lead Counsel has made relevant documents concerning the Settlement available on its firm website. *Id.* ¶8; Gardner Decl. ¶68.

The Notice contains a detailed description of the nature and procedural history of the Action, as well as the material terms of the Settlement, including, *inter alia*: (i) the recovery under the Settlement; (ii) the manner in which the Net Settlement Fund will be allocated among eligible

Settlement Class Members; (iii) a description of the claims that will be released in the Settlement; (iv) the right and mechanism for Settlement Class Members to exclude themselves; and (v) the right and mechanism for Settlement Class Members to object to the Settlement, the Plan of Allocation, and/or the Fee and Expense Application.

Accordingly, the Notice program fully satisfied Rule 23(c)(2)(B), which requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Notice also satisfied the specific requirements of the PSLRA and Rule 23(e)(1), which requires that notice must be provided in a "reasonable manner."

Although the deadlines to object or seek exclusion are not until October 8, 2015, to date no objections to the Settlement have been received, there have been no objections to the proposed Plan of Allocation, and the Claims Administrator has received only two invalid requests for exclusion from the Settlement Class. Gardner Decl. ¶69, Ex. 3 ¶¶11-12.

## CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court grant final approval to the proposed Settlement, finally certify the Settlement Class, and approve the proposed Plan of Allocation.  A proposed Judgment and order approving the Plan of Allocation will be submitted with Lead Plaintiff's reply papers, after the October 8, 2015 deadlines for seeking exclusion and objecting have passed.

DATED:  September 24, 2015                     LABATON SUCHAROW LLP


                                              */s/ Jonathan Gardner*
                                              JONATHAN GARDNER

                                              JONATHAN GARDNER
                                              CAROL C. VILLEGAS
                                              140 Broadway, 34th Floor
                                              New York, NY  10005
                                              Telephone:  212/907-0700
                                              212/818-0477 (fax)
                                              Email:  jgardner@labaton.com
                                              Email:  cvillegas@labaton.com

                                              *Attorneys for Lead Plaintiff Carpenters' Local 27*
                                              *Defined Benefit Trust Fund*


                                              ROBBINS GELLER RUDMAN
                                                 & DOWD LLP
                                              DAVID W. MITCHELL
                                              CHRISTOPHER D. STEWART
                                              LONNIE A. BROWNE
                                              655 West Broadway, Suite 1900
                                              San Diego, CA  92101
                                              Telephone:  619/231-1058
                                              619/231-7423 (fax)
                                              Email:  davidm@rgrdlaw.com
                                              Email:  cstewart@rgrdlaw.com
                                              Email:  lbrowne@rgrdlaw.com

                                              *Additional Plaintiff's Counsel*

GOLDMAN SCARLATO  & PENNY, P.C.
PAUL J. SCARLATO (47155)
BRIAN D. PENNY (86805)
101 East Lancaster Avenue, Suite 204
Wayne, PA  19087
Telephone:  484/342-0700
484/580-8729 (fax)
Email:  scarlato@gskplaw.com
Email:  penny@gskplaw.com

*Liaison Counsel for the Class*

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 24, 2015,  I caused the foregoing Memorandum of

Law In Support of Lead Plaintiff's Uncontested Motion for Final Approval of Class Action

Settlement and Plan of Allocation to be served electronically on all ECF participants.

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case
(who therefore require manual noticing).


**CAROLE A. BRODERICK**
Berger & Montague P.C.
1622 Locust Street
Philadelphia, PA 19103-6365


<u>/s/ <em>Jonathan Gardner</em></u>
Jonathan Gardner
